DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

|  |  |
|---|---|
| SPICE MERCHANTS ENTITIES CORP., a Michigan corporation, and STM Properties, LLC, a Michigan limited liability company, and LISA FREEMAN, a Michigan individual, <br><br> *Plaintiffs,* <br><br> v. <br><br> PRETTY COLORADO, LLC, a Colorado limited liability company, CORINE WINSLOW, a Colorado individual, and ELLIS YOUNG (USA), LTD, a Colorado limited liability company. <br><br> *Defendant.* | CASE NO. |

## VERIFIED COMPLAINT

Spice Merchants Entities Corp. ("Spice"), STM Properties, LLC ("STM") and Lisa Freeman ("Freeman"), by and through their undersigned counsel, hereby submit this Complaint against Pretty Colorado, LLC ("Pretty"), Corinne Winslow ("Winslow") and Ellis Young (USA), Ltd. ("Young") (Pretty, Winslow and Young will be collectively referred to as "Defendants").

## PARTIES, JURISDICTION AND VENUE

1.      Spice is a Michigan corporation with its principal place of business located at 3150 Blue Star Highway, Saugatuck, Michigan 49453.

2.      STM is a Michigan limited liability company also located at 3150 Blue Star Highway, Saugatuck, Michigan 49453.  All members of STM are citizens and residents of Michigan.

3.      Freeman is a citizen and resident of Michigan.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

4.      Pretty is a Colorado limited liability company, whose registered agent is the Klug Law Firm, 325 Lake Dillon Drive, Suite 102, Dillon CO, 80435.  All members of Pretty are citizens and residents of Colorado.

5.      Winslow is the managing member of Pretty and she has a business address of 324 South Main Street, Unit B, Breckenridge, CO 80424 and a home address of 91 Audrey Circle, Breckenridge, CO 80424.

6.      Young is a Colorado limited liability Company located at 600 N Gaylord Street, Denver, Colorado 80206-3717.  All members of Young are citizens and residents of Colorado.

7.      Personal jurisdiction and venue are proper with this Court as all the Defendants are citizens or residents of Colorado.

8.      Subject matter jurisdiction is proper because there are claims for relief for trademark infringement, 15 U.S.C. § 1114 and trade dress infringement pursuant to 15 U.S.C. § 1125(a).  *See also* 28 U.S.C. § 1338.

9.      Subject matter jurisdiction is also proper in that the matters in controversy exceed $75,000, exclusive of interest and costs, and all Plaintiffs and all Defendants, including the members of the limited liability companies, are citizens of different states.

10.      Venue is proper over all Defendants as they all reside in this district.

## **GENERAL ALLEGATIONS**

11.      Spice is a franchisor that licenses the marks Spice Merchants and Spice & Tea Merchants to franchisees who operate retail businesses that sell spices, spice blends, teas and related items.

12.      Spice has been in operation since 2003, franchising since 2010 and currently has fourteen stores throughout the United States.

2

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

13.     Lisa Freeman, the managing member of Spice, is the owner of incontestable United States Patent and Trademark Registration No. 5048478 for the trademark Spice & Tea Merchants (the "Mark").  Freeman licenses the Mark to Spice which, in turn, licenses the Mark to franchisees.

14.     The fourteen Spice stores have a common and distinct trade dress.

15.     In 2009, Spice established a location in Breckenridge.

16.     By lease agreement effective May 15, 2017 (the "Head Lease"), STM leased from Young the property located at 324 South Main Street, Unit B, Breckenridge, CO 80424 (the "Store") for Spice to operate a retail business.

17.      The Breckenridge Spice retail shop was operated using the Mark as a franchisor owned store from May 2017 until January 2022.

18.     The term of the Head Lease was extended several times, the last extension being executed on February 16, 2022, by STM.  This last extension extended the Head Lease through March 31, 2025.

19.     Winslow was a manager of the Store in 2021.

20.     Winslow formed Pretty with the Colorado Secretary of State on March 22, 2021.

21.     Also, in 2021 Winslow began discussing becoming a franchisee of Spice and acquiring the Store's inventory.

22.     Accordingly, a Franchise Disclosure Document was tendered by Spice to Winslow on or about November 1, 2021, that contained a proposed Franchise Agreement (the "Franchise Agreement") as an exhibit.

23.     On February 28, 2022, after many requests from Spice, Pretty executed the Franchise Agreement first tendered in November 2021.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

24.     Spice executed the Franchise Agreement thereafter.

25.     Also on February 28, 2022, Winslow executed the guarantee to the Franchise Agreement and a Nondisclosure and Noncompetition Agreement concerning the Breckenridge franchise.

26.     In early 2022 Pretty and Winslow agreed to purchase the Store at the value of its inventory.

27.     On or about January 6, 2022 a valuation of the Store's inventory was done that resulted in a valuation of $39,144.94.

28.     Subsequently, a purchase agreement, along with a promissory note, was tendered by Spice to Pretty and Winslow to account for the value of the inventory.

29.     Winslow, however, never executed either the purchase agreement or the promissory note despite request from Spice.

30.     By an agreement dated January 6, 2022, STM entered into a sublease (the "Sublease") for the Store.  The Sublease named "Spice & Tea Merchants Breckenridge, LLC" as tenant and its term ended March 31, 2022.

31.     Spice and Tea Merchants Breckenridge is a tradename registered with the Colorado Secretary of State by Pretty on December 7, 2021.

32.     Winslow signed the Sublease on behalf of Spice & Tea Merchants Breckenridge, LLC.

33.     By executing the Sublease as an LLC, Winslow represented that Spice & Tea Merchants Breckenridge was a Colorado limited liability company when it was merely a tradename registered with the Colorado Secretary of State by Pretty.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

34.     A guarantee of the Sublease was also executed by Winslow as the nonexistent Spice & Tea Merchants Breckenridge, LLC.

35.     Young approved the subletting to a company of Winslow's on February 16, 2022, when it extended the Head Lease.

36.     In late March of 2022, STM tendered a sublease to Pretty with a term that expired March 31, 2025.

37.     Winslow refused to execute the new sublease on behalf of Pretty.

38.     Accordingly, the Sublease expired on March 31, 2022.

39.     Nevertheless, Pretty and Winslow continued to operate the Store into late 2023 as a Spice franchisee with STM as the sublessor and Winslow as a month-to-month sublessee of STM.

40.     Pretty and/or Winslow paid rent, condominium association dues and taxes directly to Young from April 2022 through at least the end of 2023.

41.     Pretty initially violated Article 4.4 of the Franchise Agreement by failing to pay October 2023 royalties in a timely manner.

42.     On November 20, 2023, Spice sent Pretty and its counsel a default letter advising Pretty it had ten days to cure by paying Spice at least $759.24.  The default letter warned that Pretty's franchise rights would terminate pursuant to Article 15.1 of the Franchise Agreement in ten days if the monetary default was not cured.

43.     The November 20, 2023 default letter also advised Pretty that it had not complied with both Article 4.3 of the Franchise Agreement regarding minimum monthly advertising expenditures and Article 7.1 of the Franchise Agreement regarding providing quarterly and annual financial statements.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

44.     The November 20, 2023 default letter went on to advise Pretty that its franchise rights would terminate pursuant to Article 15.1 if the advertising and financial statement defaults were not cured in 30 days.

45.     Pretty failed to cure any of its franchise defaults within the requisite ten or thirty days.  Accordingly, by operation of Article 15.1 of the Franchise Agreement, Pretty's franchise rights terminated in 2023.

46.      On November 29, 2023, STM served a notice to quit on Pretty "and all other occupants of the premises" demanding that they vacate the Store no later than midnight December 31, 2023.

47.     Pretty did not vacate the Store by midnight December 31, 2023, or ever.

48.     The Head Lease specified five events of defaults and corresponding cure periods whereby Young could terminate the rights of STM under the Head Lease.  These defaults were as follows:

> A)  Lessee shall fail to pay any Base Rent or Additional Rent, or portions thereof, and the failure continues for five (5) days.
>
> B)  Lessee vacates the Premises for a period of twenty (20) days or more.
>
> C)  The interest of Lessee under this Lease shall be levied upon under execution or other legal process.
>
> D)  Any petition shall be filed by or against Lessee to declare Lessee as bankrupt, for the reorganization or rehabilitation of Lessee or to delay, reduce or modify Lessee's debts or obligations, if any, or if Lessee be declared insolvent according to law, or if any assignment of Lessee's property shall be made for the benefit of creditors, or if a receiver or trustee is appointed for Lessee or Lessee's property.
>
> E)  Lessee fails to comply with any term, provision or covenant of this Lease, other than as described in Section 15.01 (A), and the failure is not cured, after written Notice by Lessor, within twenty (20) days. If the Default cannot be cured completely within twenty (20) days, Lessee shall not be in Default if Lessee commences to cure the Default within twenty (20) days and diligently continues to cure the Default.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

49.     On December 8, 2023, Young terminated the Head Lease for various reasons other than those specified in the Lease including not getting approval to sublet to Pretty.  No opportunity to cure was provided to STM by Young.

50.     Also, on December 8, 2023, Young leased the premises where the Store was situated to Pretty whom Young had used a pretext to terminate the Lease.

51.     Pretty and Winslow have reopened or are preparing to reopen the Store as Breckenridge Tea & Spice to sell spices, spice blends, teas and related items in violation of the covenant not to compete and using leftover uses of the Mark and Spice trade dress.

### **FIRST CLAIM FOR RELIEF**
**(Trademark Infringement under the Statutory Laws of the United States – Freeman and Spice against Pretty and Winslow)**

52.     Spice incorporates all prior allegations.

53.     This claim for relief is made pursuant to 15 U.S.C. § 1114.

54.     Freeman has federally-registered the Mark entitling her to the presumption that she has the exclusive right to use the Mark in commerce. Freeman licenses the Mark to Spice, who, in turn, licenses it to its franchisees.

55.     The Mark has been widely publicized through advertising in the United States. Freeman and her franchisees have spent hundreds of thousands of dollars in this regard. As a result, the Mark is well and favorably known to the purchasing public as a distinctive indicator of the goods and services offered by Freeman, Spice and its franchisees. The public associates the Mark with goods of a high and uniform quality. This enables Freeman and Spice and those who lawfully license the Mark to compete more effectively in the marketplace.

56.     Pretty and Winslow possess no right to use the Mark yet are using a mark, Breckenridge Tea & Spice, that is likely to cause confusion as to source and origin in connection

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

with the sale of goods and services that are substantially similar to those offered by Spice and Spice's franchisees.

57.     Pretty and Winslow are using Breckenridge Tea & Spice in connection with the sale of spices, spice blends, teas, and related items to confuse prospective purchasers, thereby inducing purchasers to believe, contrary to fact, that the goods offered by Defendants are rendered, sponsored, or otherwise connected to Freeman and Spice.

58.     Pretty and Winslow's use of Breckenridge Tea & Spice constitutes infringement within the meaning of 15 U.S.C. § 1114 as such use is likely to cause confusion, to cause mistake or to deceive.

59.     Pretty, as a former franchisee, and Winslow, as the guarantor of Pretty's obligations under the Franchise Agreement had actual knowledge of the rights of Freeman and Spice in the Mark during their infringing activities.  Thus, Pretty and Winslow are willfully and deliberately infringing the rights of Freeman and Spice in the Mark.

60.     Pretty and Winslow have caused irreparable injury, loss of reputation and pecuniary damages to Freeman and Spice and Spice's franchisees.  Unless enjoined by this Court, Pretty and Winslow will continue their infringement to the immediate and irreparable damage of Freeman and Spice.

61.     Pursuant to 15 U.S.C. § 1116, Freeman and Spice are entitled to preliminary and permanent injunctive relief.

62.     In addition to injunctive relief, pursuant to 15 U.S.C. § 1117, the unlawful use of and/or infringement upon the Mark has caused Freeman and Spice to suffer substantial direct and consequential damages in an amount to be established at trial.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

63.     Under 15 U.S.C. §1117(a), Freeman and Spice are also entitled to recover the profits of Pretty and Winslow including enhanced damages and the costs of this action.

64.     Moreover, as this case is exceptional, particularly as Pretty is a former licensee, Plaintiffs are entitled to judgment for their reasonable attorney's fees and costs, as provided for under 15 U.S.C. § 1117(a).

WHEREFORE, Spice and Freeman request relief as set forth at the end of this Verified Complaint.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition under the Statutory Laws of the United States – Spice against Pretty and Winslow)

65.     Spice incorporates all prior allegations.

66.     This claim for relief is made pursuant to 15 U.S.C. § 1125(a).

67.     Spice and Pretty, in Breckenridge, also operated under the trademark, Spice & Tea Merchants Breckenridge.

68.     Spice franchises and franchisor owned locations have an inherently distinctive trade dress consisting of franchisor specification custom-built furniture and fixtures handmade out of Michigan, sourced barn beams and barn siding, metal shelving, custom built metal tables and racks (placed parallel to one another), specifically sourced bakers' hutch and pie safe, butcher blocks, India sourced wooden rice bowls and crates, and unique antique furniture and display pieces.  This very specific build-out was designed to accommodate square glass display jars, smaller glass retail jars, and hanging kraft-colored baggies (made to specs) for the display and sale of spices and teas, all of which are specially labeled with company logo, product name, product description and use, ingredients, weight, and price (collectively the "Trade Dress").

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

69.     Alternatively, the Trade Dress has become distinctive and acquired secondary meaning as a result of twenty years of use in, among other places, California, Colorado, Illinois, Kentucky, Michigan, Mississippi, North Carolina. Indiana Virginia and Texas and as a result of hundreds of thousands of dollars in sales and advertising.

70.     Pretty and Winslow, by using the mark Breckenridge Tea & Spice after using Spice & Tea Merchants Breckenridge, are violating 15 U.S.C. § 1125(a).

71.     Pretty and Winslow, despite termination of Pretty's franchise rights, continue to use the Trade Dress including attempting to cover up the Mark on the white retail baggie labels, the retail glass jar label, and the spice and tea glass display jar labels with the name Breckenridge Tea & Spice thus creating a likelihood of confusion among consumers as to the source of their competing products.

72.     The Trade Dress is nonfunctional.

73.     Spice has been damaged by the use of the Trade Dress and Breckenridge Tea & Spice after Pretty's franchise rights were terminated.

74.     Spice will be irreparably harmed by the continued use by Pretty and Winslow of the Trade Dress and Breckenridge Tea & Spice.

75.     Pursuant to 15 U.S.C. § 1116, Spice is entitled to preliminary and permanent injunctive relief for the violations of 15 U.S.C. § 1125(a).

76.     In addition to injunctive relief, pursuant to 15 U.S.C. § 1117, the unlawful use of and/or infringement upon the Trade Dress and the use of Breckenridge Tea & Spice have caused Spice to suffer substantial direct and consequential damages in an amount to be established at trial.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

77.     Under 15 U.S.C. §1117(a), Spice is also entitled to recover the profits of Pretty and Winslow including enhanced damages and the costs of this action.

78.     Moreover, as this case is exceptional, particularly as Pretty is a former licensee, Plaintiffs are entitled to judgment for their reasonable attorney's fees and costs, as provided for under 15 U.S.C. § 1117(a).

WHEREFORE, Spice requests relief as set forth at the end of this Verified Complaint.

## THIRD CLAIM FOR RELIEF
### (Breach of Franchise Agreement Spice against Pretty)

79.     Spice incorporates all preceding allegations.

80.     Spice substantially performed its obligations under the Franchise Agreement.

81.     Article 4.4 of the Franchise Agreement required Pretty to pay an eight percent royalty based on monthly gross revenues.

82.     Pretty breached Article 4.4 of the Franchise Agreement by failing to pay royalties for monthly gross revenues since September 2023.

83.     Article 4.3 of the Franchise Agreement, after sixth months of operation, required Pretty to expend on advertising an amount equal to or greater than $150.00 or two percent of monthly gross sales.

84.     Pretty breached Article 4.3 of the Franchise Agreement by not making the required advertising expenditures.

85.     Article 7.1 of the Franchise Agreement required Pretty to supply "[q]uarterly and annual income statements concerning sales and itemized expenses as well as a balance sheet for like periods . . ."

86.     Pretty breached Article 7.1 of the Franchise Agreement by never providing Spice with any financial statements.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

87.     Spice's November 20, 2023, default notice provided Pretty with an opportunity to cure its defaults as per Article 15.1 of the Franchise Agreement.

88.     Pretty failed to cure and its rights under the Franchise Agreement were properly terminated.

89.     Article 17.3 of the Franchise required Pretty to return to Spice all stationery, printed matter and advertising materials containing the trademarks and logos of Spice.

90.     Pretty has breached the Franchise Agreement by failing to return all stationery, printed matter and advertising materials containing the Spice Merchants names and/or trademarks including product labeled with the Mark and Spice's logo.

91.     Article 17.4 of the Franchise Agreement required Pretty to cease using its "business telephone number and sign such instruments or papers and take such other steps as may be appropriate or required to transfer such telephone number to [Spice]."

92.      Pretty has breached the Franchise Agreement by failing to assign its telephone number(s) to Spice.

93.     Article 17.5 of the Franchise Agreement required Pretty upon termination of its franchise rights to return all manuals to Spice, return confidential information to Spice and to turn over its customer list to Spice.

94.     Pretty has breached Article 17.5 of the Franchise Agreement by failing to return all manuals, all confidential information – including the recipe book - and by failing to turnover its customer list.

95.     Upon information and good faith belief, Pretty has breached Article 17.5 of the Franchise Agreement by continuing to use Spice's blends.

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

96.     Article 18 of the Franchise Agreement contains a covenant not to compete clause

(the "Covenant not to Compete") which provides as follows:

> In order to protect the goodwill associated with the Spice Merchants Franchise System's Names and proprietary Methods associated with such Names, you will in your individual capacity or if a corporation, limited liability company or partnership, its respective stockholders, officers, directors, members, managers, partners, agents, spouses and key employees in such capacities as may be applicable:

> > **18.1** Neither be associated, directly or indirectly, as an employee proprietor, partner, stockholder, officer, agent, member, manager or otherwise in the operation of any similar business during the term of this Agreement no matter where such similar business may be located; nor be associated, directly or indirectly, as an employee, proprietor, partner, stockholder, officer, agent, member, manager or otherwise of a similar business for a period of two (2) years from termination of this Agreement (termination as used in this Article shall mean either expiration of this Agreement or severance of the franchise relationship pursuant to procedures set forth in Articles 14 - 17) or from the date of entry of a formal judgment enforcing this covenant by a court of competent jurisdiction, whichever is the later date. You further agree you cannot open another similar business under a different name while the post-term covenant is in effect within fifteen (15) miles of your location upon termination of this Agreement and within fifteen (15) miles of any other Spice Merchants retail location (whether franchised or operated by us or one of our affiliated entities) in operation at the time of termination of this Agreement . . .

97.     Assuming that the preparations to reopen the Store have culminated in a reopening, Pretty, by continuing to sell spices, spice blends, teas and related items is violating the Covenant not to Compete.

98.     Articles 9.5 and 23.1 allow Spice to recover its attorney's fees and costs if it is the prevailing party in litigation.

99.      Spice has incurred and will incur costs and attorney's fees.

WHEREFORE, Spice requests relief as set forth at the end of this Verified Complaint.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

## FOURTH CLAIM FOR RELIEF
### (Breach of Guarantee and Nondisclosure and Noncompetition Agreement – Spice against Winslow)

100.    Spice incorporates all prior allegations.

101.    By virtue of paragraph 1 of the guarantee, Winslow guaranteed all monetary obligations of Pretty to Spice.

102.    By virtue of paragraph 2 of the guarantee, Winslow guaranteed to reimburse Spice for attorney's fees and costs incurred in enforcing the monetary obligations of the Franchise Agreement against Pretty.

103.    Paragraph 2 of the Nondisclosure and Noncompetition Agreement executed by Winslow provides as follows:

> **COVENANT NOT TO COMPETE**. While owning the franchise or a spouse of a person having an ownership interest in the franchise, I shall not be associated with a similar business no matter where such other similar business is located; nor shall I engage in the same or similar business as a Spice Merchants business within the exclusive territory granted to me for a period of two (2) years from the date of termination of the Franchise and License Agreement (termination as used in this Article shall mean either expiration of the Franchise and License Agreement or severance of the franchise relationship pursuant to procedures set forth in Articles 14-18) or from the date of entry of a formal judgment enforcing this covenant by a court of competent jurisdiction, whichever is the later date. I agree the geographic extent of such post-term covenant shall be fifteen (15) miles from my business address at the time of termination and fifteen (15) miles from any other Spice Merchants location existing at the termination date of the Franchise and License Agreement. I shall have the burden of proving that I have not used your proprietary information in such business if I violate either the in-term or post-term covenant not to compete.

104.    Winslow has and will continue to violate the covenant not to compete in the Nondisclosure and Noncompetition Agreement if not enjoined by this Court.

WHEREFORE Spice requests the relief as set forth at the end of this Verified Complaint.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Spice against Pretty and Winslow)

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

105.    Spice incorporates all prior allegations.

106.    At Spice's expense, in early 2022, Pretty and Winslow received the Store's inventory that had been valued by Spice at $39,144.94.

107.    Spice agreed to credit Pretty and Winslow $4,332.67 on the Store's inventory.

108.    Additionally, in early 2022, Spice provided Pretty and Winslow with approximately $72,000 in furnishings, equipment, utensils and trade dress items to be used by Pretty and Winslow in the franchise.

109.    Pretty and Winslow then received the benefit of the Store's inventory and either sold it to consumers or continues to offer it for sale to consumers.

110.    Pretty and Winslow also received the benefit of the Store's furnishings, equipment, utensils and trade dress items.

111.    Under the circumstances, it would be unjust for Pretty and Winslow to either to have sold the Store's inventory or retained the Store's inventory without paying the value of that inventory.

112.    Under the circumstances, now that Pretty is no longer a franchisee, it would be unjust for Pretty and Winslow to retain the value of the furnishings, equipment, utensils and trade dress items.

WHEREFORE, SPICE requests the relief as set forth at the end of this Verified Complaint.

### SIXTH CLAIM FOR RELIEF
#### (Breach of Sublease – STM against Winslow)

113.    STM incorporates all prior allegations.

114.    By executing the Sublease and guaranteeing the Sublease as an unincorporated and unregistered tradename, Winslow obligated herself individually on the Sublease.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

115.   STM substantially performed under the Sublease.

116.   Section 17.02 of the Sublease provided that "[i]f Lessee shall remain on the Premises after expiration of the Term with Lessor's permission, such hold over shall be deemed a month-to-month tenancy terminable upon thirty (30) days' notice."

117.   As a month-to-month sub-tenant, Winslow continued to occupy the premises on which the Store was situated after March 31, 2022.

118.   On November 29, 2023, however, STM served upon, among others, Pretty d/b/a Spice & Tea Merchants Breckenridge and all other occupants a Notice to Quit demanding that they surrender and vacate the premises on which the Store was situated by the end of 2023.

119.   To date, Winslow has not surrendered the premises on which the Store has been situated.

120.   As a result, STM is entitled to possession of the premises on which the Store is situated.

121.   As a result, STM is entitled to damages for recovering the premises on which the Store is situated including its attorney's fees and costs pursuant to Sections 15.02(A) and 22.01 of the Sublease.

WHEREFORE, STM requests the relief as set forth at the end of this Verified Complaint.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Head Lease – STM against Young)

122.   STM incorporates all prior allegations.

123.   STM substantially performed under the Head Lease.

124.   Nevertheless, Young terminated the Head Lease when STM had not defaulted and, even if STM had defaulted, Young failed to give STM an opportunity to cure any default.

125.   STM has been damaged by Young's breach of the Head Lease.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

126.     As a result, STM is entitled to damages and/or specific performance of the Head Lease by Young including granting STM access to the premises on which the Store is situated through March 31, 2025, plus the number of months since December 31, 2023 that STM has been excluded, all at the rental rate called for in the Fourth Extension of Commercial Lease.

WHEREFORE, STM requests relief as set forth at the end of this Verified Complaint.

**EIGHTH CLAIM FOR RELIEF**
**(Interference with Contractual Relations – STM against Young)**

127.     STM incorporates all prior allegations.

128.     STM and Winslow were parties to the Sublease.

129.     Young knew of the Sublease and/or subleasing arrangement and was aware that STM had served a notice to quit so that STM could reoccupy the premises on which the Store was situated after December 31, 2023.

130.     Nevertheless, Young intentionally and improperly terminated the Head Lease, cutting off STM's ability to reoccupy the premises on which the Store was situated.

131.     Young's improper termination has allowed Pretty and/or Winslow to breach the Sublease and remain on the premises at which the Store is situated.

132.     Young's actions have caused STM damages.

WHEREFORE, STM requests relief as set forth at the end of this Verified Complaint.

**NINTH CLAIM FOR RELIEF**
**(Interference with Contractual Relations – STM against Pretty and Winslow)**

133.     STM incorporates all prior allegations.

134.     STM and Young were parties to the Head Lease.

135.     Pretty and Winslow were aware that STM and Young were parties to the Head Lease.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

136.     Pretty and Winslow intentionally induced Young to terminate STM's rights under the Head Lease.

137.     Pretty and Winslow acted improperly.

138.     STM has been damaged by Pretty and Winslow's interference with the contractual relationship between STM and Young regarding the Head Lease.

WHEREFORE, STM requests relief as set forth at the end of this Verified Complaint.

## TENTH CLAIM FOR RELIEF
### (Interference with Contractual Relations – Spice against Young)

139.     Spice incorporates all prior allegations.

140.     Spice and Pretty were parties to the Franchise Agreement.

141.     Spice and Winslow were parties to the Nondisclosure and Noncompetition Agreement.

142.     Young knew of the existence or had reason to know of the existence of the Franchise Agreement and Nondisclosure Agreement.

143.     By terminating the Head Lease, Young intentionally induced Pretty to breach the Franchise Agreement and Winslow to breach the Nondisclosure and Noncompetition Agreement.

144.     Such termination has allowed Pretty to retain possession of the premises on which the Store is located and operate the Store in violation of the covenant not to compete in the Franchise Agreement and all other post-termination obligations of Pretty and Winslow.

145.     Young's interference with the Franchise Agreement and Nondisclosure and Noncompetition Agreement was improper.

146.     Spice has been damaged by Young's interference with the Franchise Agreement and Nondisclosure and Noncompetition Agreement.

WHEREFORE, Spice requests relief as set forth at the end of this Verified Complaint.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

## ELEVENTH CLAIM FOR RELIEF
### (Civil Theft – Spice against all Defendants)

147.    Spice incorporates all prior allegations.

148.    This claim for relief is brought pursuant to C.R.S. § 18-4-405.

149.    In a letter dated December 22, 2023, Young asserted that the contents of the Store belonged to Young.

150.    In that same December 22, 2023 letter, Young asserted that it had transferred the contents of the Store to Pretty and Winslow.

151.    The inventory, furnishings, equipment, utensils, and trade dress items in the Store prior to Pretty and Winslow taking possession of the Store, however, belonged to Spice.

152.    The actions of Young asserting dominion over the inventory, furnishings, equipment, utensils, and trade dress items in the Store that belonged to Spice as well as the actions of Pretty and Winslow in accepting the contents of the Store constitute theft.

153.    Spice has been damaged by the Defendants theft of its personal property.

WHEREFORE, Spice seeks the relief requested at the end of this Verified Complaint against all Defendants.

## TWELTTH CLAIM FOR RELIEF
### (Civil Conspiracy – all Plaintiffs against all Defendants)

154.    Spice and STM incorporate all prior allegations.

155.    Pretty, Winslow and Young had a meeting of the minds to:  a) infringe the Mark and Trade Dress; b) breach the Franchise Agreement, Guarantee, Sublease and Head Lease; c) interfere with the contractual relations of STM and Spice; and d) steal the inventory, furnishings, equipment, utensils and trade dress items of Spice.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

156.    Pretty, Winslow and Young unlawfully and overtly then conspired to: a) infringe the Mark and Trade Dress; b) breach the Franchise Agreement, Guarantee, Sublease and Head Lease; c) interfere with the contractual relations of STM and Spice; and d) steal the inventory, furnishings, equipment, utensils and trade dress items of Spice.

157.    The conspiracy of Pretty, Winslow and Young proximately caused damages to Spice and STM.

WHEREFORE, Spice and STM request the following relief against Pretty, Winslow and Young.

a.    Pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116, a preliminary and permanent injunction enjoining Pretty and Winslow and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from infringing the Mark, using the Trade Dress and otherwise unfairly competing.

b.    Consistent with 15 U.S.C. § 1117, Pretty and Winslow's profits, trebled, costs and attorney's fees for trademark and unfair competition.

c.    Damages in an amount to be proved at trial against Pretty for breach of the Franchise Agreement, including lost future royalties.

d.    Damages against Winslow for breach of the guarantee and breach of the Nondisclosure and Noncompetition Agreement in an amount to be proved at trial including lost future royalties.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

e.      A declaration pursuant to Fed. R. Civ. P. 57 that the Franchise Agreement was terminated in conformance with the Franchise Agreement and all franchise rights of Pretty are no longer.

f.      Pursuant to Fed. R. Civ. P. 65, a preliminary and permanent injunction enjoining Pretty and Winslow and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from being associated, directly or indirectly as an employee, proprietor, partner, stockholder, officer, agent, member, manager or otherwise of a similar business to a Spice franchisee for a period of two (2) years from the date of entry of a formal judgment enforcing the covenant by this Court at the Store or within fifteen (15) miles of the Store and within fifteen (15) miles of any other Spice Merchants retail location (whether franchised or operated by Spice or one of its affiliated entities).

g.      Pursuant to Fed. R. Civ. P. 65, a preliminary and permanent injunction enjoining Pretty and Winslow and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise to provide Spice with the Store's customer list, assign Spice the Store's telephone number, return all trademarked and logoed items and all manuals including any written form of the proprietary Spice blend recipes.

h.      Judgment against Pretty and Winslow for the value of the Store's inventory, furnishings, equipment, utensils and trade dress items.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

i.       A declaration pursuant to C.R.S. § 13-40-115 that Pretty and/or Winslow have committed an unlawful detainer and a preliminary injunction and permanent injunction restoring the Store to STM.

j.       Judgment against Winslow in an amount to be proved at trial for breach of the Sublease.

k.       An order that Young be required to specifically perform the Head Lease including granting STM access to the premises on which the Store is situated through March 31, 2025 plus the number of months since December 31, 2023 that STM has been excluded, all at the rental rate called for in the Fourth Extension of Commercial Lease.

l.       Damages in an amount to be proved at trial against Young for the period that STM could not occupy the premises on which the Store was situated.

m.       An award of damages in an amount to be proved at trial against Young for interfering with the Sublease.

n.       An award of damages in an amount to be proved at trial against Pretty and Winslow for interfering with the Head Lease.

o.       An award of damages in an amount to be proved at trial against Young for interfering with the Franchise Agreement and Nondisclosure and Noncompetition Agreement.

p.       Pursuant to C.R.S. § 18-4-405, treble damages against Defendants, jointly and severally, measured by the value of the items in the Store that belonged to Spice at the time Pretty took over location.

952170

DocuSign Envelope ID: 2F1607E5-B578-4801-ABEC-0D3105DEFE0D

q.      Damages, including exemplary damages, against all Defendants for their civil conspiracy.

r.      Costs and attorney's fees be assessed against Pretty, Winslow and Young and in favor of Spice and STM pursuant to applicable contractual provision, statute, or rule.

s.      Such other and further relief as the Court deems just and proper in the premises.

**PLAINTIFFS REQUEST A JURY ON ALL MATTERS SO TRIABLE.**

<u>**VERIFICATION**</u>

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Lisa Freeman

Respectfully submitted this 6th day of February, 2024.

ROBINSON, WATERS & O'DORISIO, P.C.

*/s/ Harold R. Bruno III (original signature on file)*
Harold R. Bruno III, Esq.
Samuel G. John, Esq.
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
hbruno@rwolaw.com
sjohn@rwolaw.com

*Counsel for Plaintiffs*

952170