IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00371-NRN

SPICE MERCHANTS ENTITIES CORP., a Michigan corporation,
STM Properties, LLC, a Michigan limited liability company, and
LISA FREEMAN, a Michigan individual,

Plaintiffs,

v.

PRETTY COLORADO, LLC, a Colorado limited liability company,
CORINE WINSLOW, a Colorado individual, and
ELLIS YOUNG (USA), LTD, a Colorado limited liability company,

Defendants.

---

## ORDER DENYING
## DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF No. 17).

---

**N. REID NEUREITER**
**United States Magistrate Judge**

The Parties have consented to the jurisdiction of this magistrate judge for all purposes and Judge Regina M. Rodriguez issued an Order of Reference on May 6, 2024. ECF. No. 29.

This matter comes before the Court on Defendant's Partial Motion to Dismiss, filed on April 4, 2024. ECF No. 17. Plaintiffs opposed the motion on April 25, 2024. ECF No. 26. Defendants filed a reply in support on May 9. 2024. ECF No. 31.

It is fair to say that the Court and the Parties were then distracted from the substance of Defendants' motion to dismiss by an evidentiary preliminary injunction hearing that began on May 28, 2024, with additional days of hearing and argument on June 7, 2024, and June 14, 2024. *See* ECF Nos. 45, 52, 54. Hoping that the matter

could be resolved through mediation, the Parties and the Court effectively agreed to stay proceedings (and any decision on the preliminary injunction) while a settlement conference could be scheduled with Chief Magistrate Judge Michael E. Hegarty. *See* ECF No. 56 (Order setting settlement conference). The settlement conference did not bear fruit.

After the delay associated with the mediation, on September 24, 2024 the Court issued a decision on the preliminary injunction motion, granting in limited part the injunction, but denying much of the requested relief, including the request to enforce a non-compete provision. *See* ECF No. 67. The Court finally entered a scheduling order in the case on October 17, 2024. ECF No. 76.

After all this opening jousting, a decision on Defendants partial motion to dismiss is overdue.

I. **Background of the Case and Allegations of the Complaint**

    a. **Plaintiffs' Allegations**

The nature of the overarching disputes between the Parties is laid out in detail in the Court's Order on Plaintiff's Motion for Preliminary Injunction. ECF No. 67. The following allegations are taken from the Complaint, ECF No. 1, and will be repeated here in a limited fashion only as necessary.

Plaintiffs are Spice Merchants Entities Corp. ("Spice"), STM Properties, LLC ("STM"), and Lisa Freeman ("Freeman"). Freeman is a Michigan resident and citizen. She is the founder and owner of Spice and STM, which are Michigan entities. Defendant Pretty Colorado, LLC ("Pretty") is a Colorado company owned by Defendant Corinne Winslow ("Winslow"). Defendant Ellis Young (USA) Ltd. ("Young") is a Colorado

company. Young is the landlord caught in the fight between Freeman and her Spice entities on one hand, and Winslow and Pretty on the other.

This is, at its heart, a dispute between a franchisor (Freeman and Spice) and a former franchisee (Winslow and Pretty). Spice is a franchisor that licenses the marks Spice Merchants and Spice & Tea Merchants to franchisees who operate retail businesses that sell spices, spice blends, teas, and related items. ECF No. 1 ¶ 11. Freeman, the managing member of Spice, is the owner of United States Trademark Registration No. 5048478 for the trademark "Spice & Tea Merchants" (the "Mark"). Freeman licenses the Mark to Spice which, in turn, licenses the Mark to franchisees. *Id.* ¶ 13. In 2009, Spice established a location in Breckenridge. *Id.* ¶ 15. Young, as landlord, leased the property located at 324 South Main Street, Breckenridge, to STM for Spice to operate a retail business. The lease agreement between Young and STM is referred to as the "Head Lease." *Id.* ¶ 16. STM is Freeman's vehicle for real estate transactions and holds leases for certain store locations.

The Breckenridge Spice retail shop was operated using the Mark as a franchisor-owned store from May 2017 until January 2022. The term of the Head Lease was extended several times, the last extension being executed by STM on February 16, 2022, which extended the Head Lease through March 31, 2025. *Id.* ¶¶ 17–18.

Winslow was the Breckenridge store manager in 2021. She formed Pretty in March 2021 and began discussions with Freeman about the possibility of becoming a franchisee of Spice, acquiring the Breckenridge store's inventory, and running the Breckenridge store as her own. *Id.* ¶¶ 19–21. Pretty executed a Franchise Agreement in November 2021. *Id.* ¶ 23. In early 2022, Pretty and Winslow agreed to purchase the

3

Breckenridge store at the value of its inventory, which his alleged to have been $39,144.94. *Id.* ¶¶ 26–27. However, Winslow never executed a purchase agreement or a promissory note for the value of the inventory, despite a request from Spice. *Id* ¶ 29. She did take possession of the inventory and fixtures in the building, however. Winslow entered into a sublease for the store on January 6, 2022. The sublease is in the name of "Spice & Tea Merchants Breckenridge, LLC"—a tradename registered by Pretty with the Colorado Secretary of State. *Id.* ¶¶ 30–33. The Complaint specifically alleges that Young approved the sublease to Winslow's company in February 2022. *Id.* ¶¶ 25; 35.

The term of the sublease expired on March 31, 2022, but Winslow and Pretty continued to operate the store into late-2023 as a Spice franchisee, with STM as the sublessor and Winslow as a month-to-month sublessee of STM. *Id.* ¶ 39.

Pretty allegedly violated the Franchise Agreement by failing to timely pay October 2023 royalties in the amount of $759.24. Spice sent a default letter which warned that the franchise rights would terminate in ten days if the monetary default was not cured. It also advised Pretty that it had not complied with other provisions of the Franchise Agreement regarding minimum monthly advertising expenditures and providing quarterly and annual financial statements. The letter gave 30 days to cure the advertising and financial statement defaults. *Id.* ¶¶ 41–44.

Pretty failed to cure any of the claimed defaults within the prescribed timeframe, and on November 29, 2023, STM served a "notice to quit" on Pretty demanding that Pretty vacate the store no later than midnight December 31, 2023. *Id.* ¶¶ 44–45. But Pretty did not vacate the store.

4

Apparently, Young and Winslow were in contact about the situation and Young then terminated the Head Lease and signed a new lease agreement with Pretty. Pretty and Winslow then reopened the store as "Breckenridge Tea & Spice" to sell spices, spice blends, teas, and related items, in arguable violation of the covenant not to compete and while continuing to use the Mark and Spice trade dress. *Id.* ¶¶ 49–51.

Thus, per the Complaint, Spice previously had a franchise location in Breckenridge, Colorado, ongoing franchise royalty payments, and at least an implicit promise to be reimbursed for the value of the inventory and furnishings that Winslow acquired when she started her store. Today, Spice has nothing in Colorado: no franchise location in Breckenridge, no payment for the inventory it lost to Winslow and Pretty, and no lease. It also has a competitor—Pretty—selling the substantially the same products its franchisee previously sold, in the same location.

### b.  Plaintiffs' Claims for Relief

Plaintiffs Freeman, Spice, and STM bring multiple claims against multiple parties in their Complaint.

In Claim 1, Freeman and Spice assert a claim for federal trademark infringement against Pretty and Winslow. The allegation is that the new "Breckenridge Tea & Spice" mark being used by Pretty and Winslow is likely to cause confusion as to the source and origin of the goods being sold under that mark, inducing purchasers to believe that the goods are somehow sponsored or connected to Freeman and Spice. *Id.* ¶¶ 52–64.

In Claim 2, Spice makes a claim for unfair competition under 15 U.S.C. § 1125 (a) (the "Lanham Act"). Spice alleges that its franchises have, distinctive trade dress, consisting of, among other things, custom-built furniture and fixtures handmade in

5

Michigan, sourced barn beams and barn siding, metal shelving, and custom built metal tables and racks, and this trade dress has become distinctive and acquired secondary meaning in the retail market. Spice claims that despite the termination of the franchise, Pretty and Winslow, by continuing to operate using the same trade dress used by the Spice franchise, are creating a likelihood of confusion among consumers as to the source of their competing products. *Id.* ¶ ¶65–78.

In Claim 3, Spice brings against Pretty a claim for breach of the Franchise Agreement. Spice alleges, among other things, that Pretty failed to pay required royalties for monthly gross revenues since September 2023, failed to spend the required amounts on advertising, failed to supply quarterly annual income statements or other financial statements, and otherwise breached the Franchise Agreement by failing to take certain steps (such as assignment of telephone numbers and return of manuals and other confidential information) on the termination of Pretty's franchise rights. This claim also asserts that Pretty is in violation of the Franchise Agreement's non-compete clause.

In Claim 4, Spice sues Winslow individually for breach of the personal guarantee and the nondisclosure and noncompetition provisions, including a guarantee to reimburse Spice for all attorneys fees and costs incurred in enforcing the monetary obligations of the Franchise Agreement against Pretty.

In Claim 5, Spice sues Pretty and Winslow for unjust enrichment, specifically for receiving and not paying for more than $39,000 in inventory when Pretty and Winslow took over the Breckenridge store. Spice also claims that Pretty and Winslow were

6

provided with more than $72,000 in furnishings, equipment, and trade dress items which have never been paid for.

In Claim 6, STM brings a claim for breach of the sublease against Winslow. The claim is that STM substantially performed under the sublease. When Winslow did not sign a new sublease, she (or Pretty) became a month-to-month tenant. Winslow was properly served with a notice to quit and refused to leave or surrender the premises. STM claims that it is entitled to possession of the premises. STM also claims it is entitled to its attorneys fees and costs under the sublease.

In Claim 7, STM sues Young for breach of the Head Lease. STM alleges that even though it substantially performed its obligations, Young nevertheless terminated the Head Lease. And, even if STM had defaulted, Young failed to give STM any opportunity to cure any default, which the Head Lease requires.

In Claim 8, STM sues Young for interference with contractual relations. STM claims that STM and Winslow were parties to the sublease. Young knew of the sublease and was aware that STM had served Winslow with a notice to quit so that STM could reoccupy the store premises after December 31, 2023. Nevertheless, Young improperly terminated the Head Lease, cutting off STM's ability to reoccupy the premises. This allowed Pretty/Winslow to breach the sublease and remain on the premises, causing STM damages.

In Claim 9, STM sues Pretty and Winslow for interference with contractual relations, alleging that Pretty and Winslow intentionally (and wrongfully) induced Young to terminate STM's rights under the Head Lease.

7

## II. Defendants' Motion to Dismiss

Defendants now move to dismiss Claims 1, 2, and 7.

With respect to Claim 1 (trademark infringement and unfair competition in violation of 15 U.S.C. § 1114), Defendants assert that the trademarks, as submitted and approved by the Trademark and Patent Office, are for retail or on-line stores that sell cookware and cooking utensils, kitchen and culinary equipment, salt and pepper shakers, kitchen and culinary utensils and accessories, and other cooking accessories. But Defendants insist that their business does not sell such products—it is a store that sells spices and tea for drinks, food, scents, and medicinal purposes—therefore, there can be no infringement.

With respect to Claim 2 (unfair competition in violation of the Lanham Act by operating a store that allegedly uses Plaintiffs' trade dress), Defendants assert that Plaintiffs do not have any distinctive trade dress as a matter of law, lack any distinct logo or product/business name or make, and did not create the items that are claimed to be trade dress. Therefore, Defendants argue that the claim should be dismissed with prejudice for failing to state a claim upon which relief can be granted.

With respect to Claim 7 (breach of lease against Young based on allegation that Young improperly terminated the lease and failed to provide an opportunity to cure), Defendants argue that the lease prohibits subleasing without Young's consent and nothing in the Complaint alleges that Plaintiffs obtained Young's written consent to sublease to Pretty and Winslow. Defendants maintain that this breach of the lease, having persisted for so long, is uncurable, given that the invalid sublease was allegedly entered into in January of 2022 and the lease termination occurred in December 2023.

Accordingly, Defendants insist that Plaintiffs have failed to state a claim against Young with respect to breach of the lease.

**III.   Legal Standard for Deciding a Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they

plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

Defendants have attached a number of documents as exhibits to their motion to dismiss. *See* ECF No. 17-1 (28 pages). These documents include two trademark documents from the United States Patent and Trademark Office. *See* ECF No. 17-1 at 1–4 for "Mark 491" ("Spice Merchants"), and ECF No. 17-1 at 5–7 for "Mark 430" ("Spice & Tea Merchants"). Also attached are three documents related to the lease agreements between STM and Young. First is the commercial lease between Young and STM. ECF No. 17-1 at 8–22. Second is the Fourth Extension of Commercial Lease (the "Lease Extension") ECF No. 17-1 at 23. And third is the notice of termination of the commercial lease to STM Properties (the "Lease Termination Letter"). ECF No. 17-1 at 24–26. These documents fall within the categories of documents that the Court may consider in

10

deciding a motion to dismiss under Rule 12(b)(6), in addition to the well-pleaded allegations of the Complaint. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (explaining exceptions to the general rule that a court may only consider the contents of the complaint when ruling on a 12(b)(6) motion include "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

## IV. Analysis

### a. Claim 7—Breach of Head Lease

Turning first to Claim 7 (breach of lease agreement against Young), Defendants argue that Young terminated STM's Head Lease in December 2023 for various reasons, including but not limited to: failing to get approval for the Winslow/Pretty sublease that began in January 2022, failing to execute a valid sublease after March 31, 2022, and because Winslow/Pretty did not meet insurance requirements. *See* ECF Nos. 17 at 5, 171-1 at 24–25 (Lease Termination Letter). The Lease Termination Letter suggests that STM effectively vacated the premises on January 7, 2022, leaving it to be occupied by Pretty and Winslow without a valid and executed sublease. In addition, the sublease (or occupation of the premises by Pretty) was supposedly without Young's knowledge or written consent. ECF No. 17-1 at 24.

Defendants argue that nothing in the Complaint alleges Plaintiffs obtained "prior written consent from Young" when STM subleased the premises to Winslow/Pretty. And "[b]ecause Plaintiffs admit they sublet the property to Winslow/Pretty and there is no

11

allegation such sublease was approved prior to the sublease or in writing, there can be no breach claim against Young for termination." ECF No. 17 at 11. Defendants also argue that Plaintiffs never informed Young that there was no sublease after March 31, 2022. Defendants say that Young terminated the Head Lease when it learned this information, and there would have been no ability to cure a default that had gone on for so long. ECF No. 17 at 14.

In opposition, Plaintiffs insist that they have alleged enough facts to establish a claim for breach of the Head Lease. As Plaintiffs point out, the elements of a breach of contract under Colorado law are relatively simple: a plaintiff must allege (1) the existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and resulting damages. *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023).

Reviewing the allegations of the Complaint, STM properly alleges the necessary elements: that there was a contract— the Head Lease, ECF No. 1 ¶ 16; that STM substantially performed under the Head Lease, *id.* ¶ 123; and that Young breached by terminating the Head Lease without justification when STM had not defaulted, and even if STM had defaulted, Young failed to give STM an opportunity to cure, *id.* ¶ 124.

Contrary Defendants' arguments, the Complaint specifically alleges that "Young approved the subletting to a company of Winslow's on February 16, 2022, when it extended the Head Lease." *Id.* ¶ 35. Moreover, the Complaint alleges that Pretty/Winslow paid the rent, condominium association dues, and taxes directly to Young through at least the end of 2023. If Young was paid the rent directly by Pretty/Winslow, it stands to reason that Young knew of, and either implicitly or explicitly

approved of, the sublease agreement between STM and Pretty/Winslow. On a motion to dismiss, all reasonable inferences are viewed in the light most favorable to non-moving party. Here, it is a reasonable inference that Young knew and approved of the sublease agreement. In addition, although Young asserts in the Lease Termination Letter that there was no sublease, the Complaint alleges that, although the written sublease had expired, Pretty and Winslow continued to operate the store on a month-to-month sublease. *Id.* ¶ 39.

In addition, Defendants' argument that these supposed breaches of the Head Lease by STM could not have been cured, thereby justifying the termination without the opportunity to cure, is again a mere assertion by Defendants. To the extent STM was in violation for not having a written sublease, the violation could have been cured by getting Pretty/Winslow to sign a written agreement. To the extent that STM was in violation for having a sublessee without the express written approval of Young, STM was arguably curing that problem by evicting Pretty/Winslow from the leased premises. It also beggars belief that Young terminated the Head Lease because Young had never approved Pretty/Winslow as a subtenant when Young then immediately turned around and leased the premises to Pretty. *Id.* ¶ 50.

Although Young insists it was justified in terminating the Head Lease based on supposed breaches by Spice or STM, the Court cannot and will not make any such determination on a Rule 12(b)(6) motion to dismiss, which tests only the sufficiency of a complaint's well-pled allegations. Based on the allegations of the Complaint, Plaintiffs have sufficiently alleged that Young breached the Head Lease. Therefore, Defendants' motion to dismiss Claim 7 will be denied.

### b. Claim 1—Trademark Infringement

With respect to Claim 1, to state a claim for infringement of a registered trademark and unfair competition under 15 U.S.C. § 1114, the plaintiff must establish that (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark as complained of is likely to cause confusion as to the source, sponsorship, affiliation or association. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1221–22 (D. Colo. 2001), (citing *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 948 (D. Colo. 1988)).

Here, Freeman can meet the first two elements of a Section 1114 claim because she alleges that she owns the "Spice & Tea Merchants" mark and it is registered with the United States Patent and Trademark Office. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.").

The Complaint does allege that Winslow/Pretty are no longer using the Mark and have instead converted to using the name "Breckenridge Tea & Spice." Defendants argue that this means there is no longer the possibility of confusion with respect to the use of these two marks. But it is not that simple. Assessing the likelihood of confusion is generally a fact-intensive analysis. *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). It may sometimes be amenable to summary judgment in

14

appropriate circumstances, but before the Court is a motion to dismiss, not for summary judgment.

To determine whether two non-identical marks are likely to cause confusion, the Tenth Circuit directs the Court to examine six non-exhaustive factors to evaluate whether there is a likelihood of confusion: 1) the degree of similarity between the competing marks; (2) the intent of the alleged infringer in adopting the contested mark; (3) evidence of actual confusion; (4) the similarity of the parties' products and the manner in which the parties market them; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the strength of the contesting mark. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). The importance of any particular factor in a specific case "can depend on a variety of circumstances, including the force of another factor." *Id.* "These [six] factors are interrelated and no one factor is dispositive." *Sally Beauty Co. Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). The key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks. *Water Pik, Inc.*, 726 F.3d at 1143. The degree of similarity is the most important factor. *Hornaday Mfg. Co.*, 746 F.3d at 1001. A lower degree of similarity can nevertheless cause confusion when the marks are placed on closely related goods. *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1345 (Fed. Cir. 2004).

Here, the two marks are somewhat similar, although not identical. The words "Spice" and "Tea" appear in both marks, which is not surprising, given that Winslow's store is effectively the same store that is selling the same items—spices, teas, and herbs—that it previously sold when it was a franchise store selling under the Spice &

Tea Merchants Mark. The Mark that Freeman is trying to protect is not a strong mark; on the scale from weak to strong, it appears more descriptive or suggestive than arbitrary or fanciful.

This issue can be decided as a matter of law only when "no reasonable juror could find likelihood of confusion between plaintiff's and defendants' marks." *Affliction, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019) (reversing grant of summary judgment in the defendant's favor finding that fact issues remained as to likelihood of confusion between marks). At this early stage, the Court is not prepared to declare as a matter of law that there can be no likelihood of confusion.

Defendants make the additional argument that there can be no claim for trademark infringement where identical marks are used by different parties for different products or services. ECF No. 17 at 7. For this argument, Defendants rely on the fact that the International Primary Class for Plaintiffs' Mark is 035, which is for services, not associated with any goods. Defendants correctly state that the protections associated with the Mark are for "retail store services featuring cookware and cooking accessories . . . namely kitchen and culinary equipment . . . and a wide variety of other cooking accessories." According to Defendants, this has little-to-nothing to do with a specialty shop that sells tea and spices. Therefore, because the Mark is registered for something other than a tea and spice shop—a cookware and kitchen equipment store—Plaintiffs cannot use the Mark as a legal basis to prohibit someone using the mark in commerce for a tea and spice shop.

This is an interesting argument, and one which may ultimately prove successful on summary judgment. But the fact that Plaintiffs' Mark was indisputably associated for

many years with the franchise store which sold tea and spices, and Defendants are selling the same products in the same location in similar packaging, suggests (at least at the motion to dismiss stage) that there could be confusion here.

For these reasons, the motion to dismiss Claim 1 will be denied.

### c. Claim 2—Unfair Competition

Claim 2 is brought under the Lanham Act, which prohibits, on or connection with any goods or services, the use in commerce of any word, name, symbol, or combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, that "is likely to confuse, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." other person." 15 U.S.C. § 1125(a)(1)(A).

"Courts addressing claims of both trademark infringement and unfair competition address the claims together because they have virtually identical elements[.]" *RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *5 (D. Colo. Nov. 15, 2019) (citation omitted). Thus, for the same reasons that the Court denies the motion to dismiss Plaintiffs' trademark infringement claim, it will deny the motion with respect to the unfair competition claim. Plaintiffs adequately allege that the Spice franchises and franchisor-owned locations have inherently distinctive trade dress which includes custom furniture and fixtures, sourced barn beams and siding, and specifically sourced hutches and custom-built metal tables. ECF No. 1 ¶ 68. Defendants Pretty/Winslow are using a similar (although not identical) name to market the exact same goods, in the same location, using similar trade dress and packaging as the prior

franchised Spice Merchants store. The Court does not believe it is appropriate to determine on a motion to dismiss that the asserted trade dress is not protectible. *See Two Pesos, Inc. v. Taco Caba, Inc.*, 505 U.S. 763, 774 (1992) (holding that colorful trade dress for Mexican restaurant could be inherently distinctive and qualify as protected trade dress).

V. **Conclusion**

For the foregoing reasons, Defendants' Partial Motion to Dismiss, ECF No. 17, is **DENIED**.

Date: November 20, 2024

N. Reid Neureiter
United States Magistrate Judge